## THE DOBBS LUMBER COMPANY *v.* APPLING.

*Simmons, C. J.*—It appearing, upon a careful and thorough examination of the evidence contained in the record, that the plaintiffs in execution, upon whom, under section 3741 of the code, rested the burden of proving affirmatively that the claim was filed for delay only, failed to show that such was the case,

the verdict was unsupported by the evidence and ought to have been set aside.                                    *Judgment reversed.*
December 2, 1895.

Claim. Before Judge Lumpkin. Fulton superior court. September term, 1894.

An execution in favor of Appling against T. H. Austin, A. D. Boylston, W. E. Dobbs and the Fulton Lumber & Manufacturing Company, based on a judgment of July 3, 1891, was, on January 26, 1893, levied on an undivided half-interest in an estate for years in certain described land in Atlanta, "said term of years having been transferred to W. E. Dobbs and J. M. Dobbs on the 8th day of November, 1889, for the term of ten years," the undivided half-interest levied on being the property of W. E. Dobbs; "also, attached to said estate for years, certain described machinery and one building used as a planing-mill. The whole half-interest levied on as the property of W. E. Dobbs to satisfy the *fi. fa.* of Appling *vs.* The Fulton Lumber & Manufacturing Company, composed of Walter E. Dobbs at the date of the cause of action." James M. Dobbs made affidavit that he was a member and owned the principal interest in a partnership doing business under the firm name of Dobbs Lumber Company, and that the half-interest levied upon was not the property of W. E. Dobbs but was the property of the Dobbs Lumber Company. The claim was withdrawn, and the case tried upon an issue tendered that the claim was interposed for delay only. The jury found for plaintiff $125 damages. Claimant's motion for new trial was overruled, and he excepted.

Upon the trial plaintiff testified: At the date of the levy James M. and W. E. Dobbs were in possession of the property levied upon. I saw W. E. Dobbs frequently about the place seeing to the business, and at one time bought from him a bill of lumber. I do not remember the particular thing I saw James M. Dobbs doing, but he was about the mill. There was a wooden shed on the lot under which

the machinery was placed.   The machinery was attached
to the floor in the building.   There was lathing machinery
and the belting for running the machinery.   There was a
dry kiln also upon the lot.   The business carried on was
that of planing lumber, buying and selling lumber, and
building houses.   The value of the machinery and houses,
I think, was $2,500, and I think the property was worth
for rent about $300 a year.   I saw on the premises printed
the name "Dobbs Lumber Company."   There were quite
a number of others besides W. E. and J. M. Dobbs working
about the mill, but W. E. Dobbs seemed to be directing the
work.   I did not see J. M. Dobbs doing other work than
that done by W. E. Dobbs.—In evidence was a writing
signed by T. H. Austin, dated November 8, 1889, which
stated that it was between T. H. Austin of the first part,
and W. E. Dobbs and J. M. Dobbs, doing business under
the firm name of the Dobbs Lumber Company, of the
second part; that Austin, in consideration of a rental of $25
payable monthly in advance, granted and leased to W. E.
and J. M. Dobbs for ten years from December 1, 1888, cer-
tain land, describing it (being the land mentioned in the
levy), with the right to J. M. and W. E. Dobbs to build
and maintain a planing-mill and any other building or
buildings necessary to the manufacture, handling, working
or dealing in lumber of any kind, and to place any kind of
machinery whatever thereon for any of said purposes, all
of which building, machinery and improvements placed
since the beginning of this lease should remain and be the
property of J. M. and W. E. Dobbs; that the parties of the
second part should protect Austin against any raise in the
rate of insurance on any dwelling or property of Austin
adjoining the property herein leased, by reason of improve-
ments placed thereon under the terms of this lease; that at
the expiration of this lease Austin would not take advantage
of the parties of the second part on account of his owner-
ship of the land, but would again lease the premises to them

for a further term of ten years at a fair and reasonable rental to be agreed on by the parties, and in case they could not agree, then the question of rental should be submitted to arbitration. On the back of this writing was entered: "This lease is hereby cancelled and surrendered to Southern Banking & Trust Company, February 17, 1894." Signed, Dobbs Lumber Company by W. E. Dobbs, W. E. Dobbs, J. M. Dobbs by his attorney in fact, William S. Thomson. William S. Thomson testified: I am a lawyer and member of the firm of Candler & Thomson. J. M. and W. E. Dobbs were partners under the firm name of Dobbs Lumber Company, and my firm were attorneys for the company when the claim was made. At the time the levy was made J. M. Dobbs brought the lease contract with Austin and advised with me as to what should be done, stating that the greater part of the money of the Dobbs Lumber Company was put in by him, that it was the understanding and agreement between him and W. E. Dobbs that the interest of each partner should be in proportion to the capital contributed by each, that W. E. Dobbs had only contributed about one eighth, and that there were no written articles of partnership. Being of the opinion that the agreement with Austin was a lease to the partnership, and that under it the property was not subject to levy and sale, I in good faith advised that the claim should be interposed. Claimants acted on my advice and directed me to prepare the claim papers, and claimants' case was commenced and continued under and by reason of my advice. J. M. Dobbs is in Chili and has been since shortly after President Cleveland went into office, who appointed him consul at Valparaiso. W. E. Dobbs is not in the city. When the case was called for trial I supposed he was, but upon inquiry found he had left a day or two before, and his employer, for whom he was travelling, could not tell where he was; and being without witnesses, we withdrew the claim.

*Candler & Thomson*, for plaintiff in error.

*P. L. Mynatt*, contra.